## ARKANSAS STATE HIGHWAY COMM'N *v.*
## ARKANSAS REAL ESTATE COMPANY, INC. ET AL

5-5589                                    471 S.W. 2d 340

### Opinion delivered October 4, 1971

*Thomas B. Keys, George Pike, Jr.* and *Hubert Graves,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott* and *Gene Worsham,* for appellees.

LYLE BROWN, Justice. Appellees are Arkansas Real Estate Company, Inc. and Arkansas Warehouse Corpora-

tion. They owned separate record title to adjacent tracts totalling seventy-seven acres. Appellant condemned some eight acres running north and south across the west side for a controlled access facility; and also a small narrow tract along the entire south side of the acreage for drainage structures. The alleged unity of use, together with the amount of just compensation, was challenged in the trial. Both issues were submitted to a jury on interrogatories. The jury found unity of use and fixed compensation at $50,000. On appeal it is contended that the court erred in (1) permitting certain deeds into evidence which were executed after the date of taking, (2) that the landowner should not have been permitted to testify that the lands were in one ownership at the time of condemnation, and (3) that the question as to whether the tracts constituted a unity should not have been submitted to the jury.

The highway commission based its claim of separate ownership on the fact that at the time of taking (Sept. 8, 1959) the record title to some parcels was in Arkansas Real Estate Company, Inc., and the other parcels were in the name of the other appellee, Arkansas Warehouse Corporation. In fact it named each of the corporations as separate owners and listed under each one's name those parcels respectively shown in their names.

Morris High, president of Arkansas Warehouse Corporation, testified as to the interlocking nature of the two companies. We summarize his testimony. Initially the seventy-seven-acre tract was owned by Arkansas Real Estate Company. In 1958 the owners of that company created the warehouse company. Ninety-eight percent of the stock of the new company was owned by the parent corporation. Another corporation, Rose Theatre, Inc., was wholly owned by the parent company, and two small tracts within the seventy-seven acres stood in Rose's name. The entire tract is bound on the north by Roosevelt Road and on the south by Chicago, Rock Island & Pacific Railway. It was decided in 1958 that the 77-acre tract, treated as a unit, would be most profitable for the

establishment of a series of warehouses. Thus the warehouse corporation was created and it was agreed, in 1958, that all the tracts would be vested in the new corporation. In May 1958 three separate deeds were executed wherein the grantor was Arkansas Real Estate Co., Inc., and the grantee was Arkansas Warehouse Corporation. The descriptions in those deeds were rather voluminous because part of the lands was in lots and blocks and part was cut into small acreage plots. After the date of taking and some time before trial it was discovered that the transfer of five parcels into the warehouse corporation had not been made. Three of those parcels stood in the name of the real estate company and two parcels in the name of Rose Theatre, Inc. Thereupon, five separate deeds covering those properties were executed and recorded, naming the warehouse corporation as grantee. (Those are the five conveyances to which appellant objected being introduced.) Mr. High explained that the delay was due to two factors: The preparation of the deeds and the checking of title was a complicated job, and titles to some small tracts had to be perfected by obtaining quitclaim deeds. Otherwise, he insisted, the transfer of the parcels represented by the five objectionable deeds would have been executed and recorded along with the deeds in May 1958. Those five deeds included property that was subject to condemnation and of course included in the complaint.

With the recited background we turn to a consideration of the three points for reversal.

1 *The Court Erred in Allowing the Introduction of the Five Deeds.* First, appellant points out that the trial court entered an order in January 1960, finding that the real estate company owned certain tracts and that the warehouse corporation owned the other. That order was primarily for the purpose of distributing funds deposited in the registry of the court as estimated just compensation. Actual ownership was not in issue when that order was entered. In fact the order was based on an oral petition of the condemnor and does not reflect the presence of anyone representing the landowners. Had the trial court considered that order binding as to title

then title would not have later been an issue. Furthermore, the highway commission, on the eve of trial, filed a motion to try the case on the basis of separate and distinct ownership. That motion was overruled in the course of the trial.

Additionally, and with regard to the same question, we refer to the first appeal, *Arkansas State Highway Comm'n, v. Arkansas Real Estate Co., et al,* 243 Ark. 738, 421 S. W. 2d 883 (1967). The opinion on appeal of that first trial reflects an allegation of single ownership. On that issue we suggested that if the landowners were able to demonstrate a right to close the streets platted in the western portion of the tract but never opened, "they may be in a position to insist that the tract be treated as a single ownership." Subsequent thereto Arkansas Warehouse Corporation petitioned the City of Little Rock to close the streets and was successful. Thus the dispute over ownership was considered much alive in both trials, showing that the court did not treat the order of January 1960 as settling the issue. We conclude that the order merely recited the "paper title" for the purpose of distributing the deposits.

Finally, in regard to the first point appellant argues that the five deeds should not have been admitted into evidence because they were dated after the date of condemnation. We are afforded no precedent on that issue. We hold they were admissible to support the uncontradicted testimony of Mr. High to the effect that the decision to transfer all title to a single ownership was first made in 1958 and that those deeds were delayed due to the enormity of the work involved and the time required for curing of title. In fact, in a recent case we held that proof of complete record ownership in the landowner is not in every instance a prerequisite to establish unity of use. *Ahrens* v. *Harris,* 250 Ark. 938, 468 S. W. 2d 236 (1971).

II. *It Was Error to Permit the Landowner to Testify That All the Land Was in One Ownership on the Date of Condemnation.* What we have said in answering the first point should be sufficient. Additionally we

reiterate that Arkansas Real Estate Co., Inc. owned practically all the stock in Arkansas Warehouse Corporation, and all the stock of Rose Theatre, Inc. Thus it is seen that the lands were the property of three closely held corporations and that the parent company controlled the other two organizations.

Appellant further argues that an *intended* development of two parcels as a unit cannot be used as a measure of just compensation. We are not furnished any Arkansas precedent to support that contention and we are not persuaded by the cited cases from other jurisdictions. We think it is fundamental that when two contiguous parcels under a common ownership are shown to exist, the owners are entitled to compensation based on the highest and best use of the property. There was abundant evidence to show the most valuable use of the property to be for warehouse purposes and it was uncontradicted that the owners began effecting their plans in that direction in 1958 by placing most of the lands in the warehousing corporation.

III. *The Trial Court Should not have Submitted to the Jury the Question as to Whether the Tracts Constituted a Unit.* The first interrogatory submitted to the jury asked it to find whether the landowners "have proven by a preponderance of the evidence that the various tracts involved constitute one unit." The answer was unanimously in the affirmative. The appellant contends that the question was one of law for the court. We cannot agree. Certainly there may arise cases in which the question of unity is actually a question of law; but where the unity hinges on disputed facts, it is appropriate to submit the question to the jury. *Arkansas State Highway Comm'n.* v. *Schanbeck,* 240 Ark. 277, 398 S. W. 2d 897 (1966).

Affirmed.